UNITED STATES BANKRUPTCY COURT
                   FOR THE NORTHERN DISTRICT OF IOWA


IN RE:                              )
                                    )    Chapter 12
MARY L. VANTIGER-WITTE,              )
                                    )    Bankruptcy No. 05-02931
    Debtor.                         )
                                    )
MARY L. VANTIGER-WITTE,              )
                                    )    Adversary No. 06-9080
    Plaintiff,                      )
                                    )
vs.                                 )
                                    )
MORTGAGE ELECTRONIC                 )
REGISTRATION SYSTEMS;               )
FARM SERVICE AGENCY,                )
                                    )
    Defendants.                     )


**ORDER RE: COMPLAINT TO DETERMINE PRIORITY OF MORTGAGES**

This matter came before the undersigned for trial on August 2, 2006 on Debtor's Complaint to Determine Priority of Mortgages. Thomas G. McCuskey appeared for Debtor/Plaintiff Mary L. Vantiger-Witte. Randall L. Jackson appeared for Defendant Mortgage Electronic Registration Systems. Assistant U.S. Attorney Martin McLaughlin appeared for Defendant Farm Service Agency. After the presentation of evidence and argument, the Court took the matter under advisement. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K) (2005).

**STATEMENT OF THE CASE**

Debtor seeks a determination of the priorities of two mortgages on her homestead. Each Defendant asserts that its mortgage lien is superior to the lien held by the other Defendant. Mortgage Electronic Registration Systems (MERS) claims that Farm Service Agency (FSA) had actual or constructive knowledge of its mortgage interest in Debtor's homestead real estate prior to the time it recorded its mortgage. FSA denies MERS' allegation.

**FINDINGS OF FACT**

Debtor signed a note and mortgage with MERS on September 13, 2004 with a total loan amount of $79,000. The mortgage was filed

with the Henry County Recorder on September 22, 2004.  Debtor entered into the MERS note and mortgage to refinance a mortgage with Option One, recorded on June 17, 2004, which itself refinanced a previous mortgage with U.S. Bank.  According to the closing statement, Defendant's Exhibit C, MERS disbursed $66,965.92 to Option One Mortgage on September 17, 2004.  The mortgage, Defendant's Exhibit B, states on page 5 at paragraph 4 that Debtor was required to discharge any other liens, giving MERS a first lien on the real estate.

Debtor signed three notes and a mortgage with FSA on September 20, 2004.  This mortgage was filed with the Henry County Recorder on September 20, 2004.  The notes financed loans for breeding stock, machinery and annual operating expenses for Debtor's farm operations.  The total loan amount was $170,000.

Both mortgages were secured by Debtor's homestead real estate which she has subsequently sold.  The proceeds of the sale are being retained to apply toward the mortgage which has the first priority lien on the real estate.

At trial, Dawn Stewart, a loan officer with FSA, testified that she spoke with Debtor beginning in April 2004 regarding an agricultural loan.  She kept a running record in Debtor's file regarding their communications.  Ms. Stewart stated she was aware of the U.S. Bank mortgage and the refinancing of that mortgage through Option One.  In entering into the mortgage with Debtor, FSA was pursuing the best lien obtainable, which Ms. Stewart assumed was a second mortgage position subordinate to Option One's mortgage.  FSA did not do a title search on the real estate, but did pursue a U.C.C. search and verifications of debt.

Ms. Stewart testified that Debtor did not tell her of the refinancing with MERS prior to signing the September 20, 2004 mortgage.  She stated if Debtor had mentioned it, she would have made note of that in the running record in Debtor's file.  In early October 2004, Ms. Stewart received a call from an attorney for MERS, asking FSA to subordinate its lien to MERS.  FSA refused to agree to this proposal.

Debtor testified that she notified the FSA office regarding the refinancing with MERS.  She did not know whether she notified FSA before or after signing the September 20 mortgage with FSA, although she thought it was before that date.  At one point, Debtor testified she told someone at the FSA office of the MERS mortgage in late July or early August.  On further questioning, however, Debtor stated she was not sure of the dates and it was

possible she contacted FSA about the MERS mortgage after she closed on the FSA mortgage.

## CONCLUSIONS OF LAW

State law governs the resolution of property rights within a bankruptcy proceeding. In re MJK Clearing, Inc., 371 F.3d 397, 401 (8th Cir. 2004). Therefore, this Court applies Iowa law to determine the priority of liens on Iowa real estate. Iowa Code sec. 558.41(1) (2004) states:

> An instrument affecting real estate is of no validity against subsequent purchasers for a valuable consideration, without notice, . . . unless the instrument is filed and recorded in the county in which the real estate is located, as provided in this chapter.

Thus, only a recorded instrument is valid against subsequent purchasers for value without notice. A mortgagee is regarded the same as a purchaser for this purpose. Raub v. Gen. Income Sponsors of Iowa, Inc., 176 N.W.2d 216, 219 (Iowa 1970).

Existing rights may be created apart from filings in the recorder's office. Sun Valley Iowa Lake Ass'n v. Anderson, 551 N.W.2d 621, 637 (Iowa 1996). There is a presumption that the first recorded mortgage has priority. Miller v. Miller, 232 N.W. 498, 499 (Iowa 1930). A subsequent purchaser or mortgagee, however, may have actual notice of existing rights or knowledge of sufficient facts to be charged with a duty to make inquiry, which could change that order of priority. Sun Valley, 551 N.W.2d at 637. The subsequent mortgagee has the burden to establish that the mortgage was made without either actual or constructive notice of existing rights in the property. Id. at 638; Young v. Hamilton, 240 N.W. 705, 709 (Iowa 1932).

MERS is the initial mortgagee by virtue of its mortgage with Debtor dated September 13, 2004. Thus, FSA, whose mortgage was first recorded, has the burden to prove it was without either actual or constructive notice of MERS' rights in the property. It is disputed whether FSA had actual notice of MERS' mortgage. Debtor testified that she told FSA of her transaction with MERS, but did not remember whether it was before or after she entered into the mortgage with FSA. FSA's running record of communications with Debtor does not contain a record of knowledge of the MERS mortgage. The Court concludes, that FSA did not have actual knowledge of Debtor's mortgage with MERS before it entered into its mortgage with Debtor.

Generally, the County Recorder's record regarding the property constitutes constructive notice of instruments affecting title to real estate. Sun Valley, 551 N.W.2d at 637. As MERS did not record its mortgage prior to FSA's September 20, 2004 mortgage with Debtor, FSA did not have constructive notice of the MERS mortgage. It did, however, have both actual and constructive notice of the Option One mortgage which was refinanced by Debtor's mortgage with MERS.

The issues arising from this set of circumstances are whether FSA's knowledge of the Option One mortgage is relevant to determining whether it had notice of the MERS mortgage under sec. 558.41, and/or whether MERS' refinancing of the Option One subrogates it to Option One's rights, including having priority over FSA's mortgage lien.

In Miller & Chaney Bank v. Collis, 234 N.W. 550, 553 (Iowa 1931), the court considered similar issues. It questioned what constructive notice a purchaser had by reason of the recording of a first lien which was partially assigned to a third party. Id. The court stated that the record was sufficient to put him on inquiry to learn from the proper source how much was due on the first lien. Id. It found that the purchaser was not an "innocent purchaser" as he was bound to take notice of an assignment of which he would have learned had he made inquiry. Id.

The court also discussed the doctrine of equitable subrogation, stating that one class of parties entitled to subrogation consists of subsequent encumbrancers paying off a prior encumbrance. Id. at 552-53. More recently, the Iowa Supreme Court held: "This doctrine permits a person who is satisfying an obligation owed by another to a third person to be placed in the obligee's position against the primary obligor. State ex rel. Palmer v. Unisys Corp., 637 N.W.2d 142, 156 (Iowa 2001) (citations omitted). In Klotz v. Klotz, 440 N.W.2d 406, 409 (Iowa Ct. App. 1989), the court stated that "one who loans money to another to pay off a realty encumbrance with the understanding the loan is for that purpose is entitled to be subrogated to the rights of any previous encumbrances." The court found the party who had paid off a contract vendor's lien was subrogated to the vendor's priority over a subsequent judgment lien. Id. at 410.

The doctrine of equitable subordination was applied in the context of competing mortgages in Kent v. Bailey, 164 N.W. 852, 853 (Iowa 1917). The court held:

4

> "Subrogation is the substitution of one person in place of another, whether as a creditor or as the possessor of any other rightful claim, so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities."
>
> It has been styled a legal fiction whereby an obligation which has been discharged by a third person is treated as still subsisting for his benefit, so that by means thereof one creditor is substituted to the rights, remedies, and securities of another.  The law recognizes two kinds of subrogation, legal and conventional. By the former is meant the right of substitution which springs as a matter of course from the mere fact of the payment of a debt without an agreement so to do between the parties.  Conventional subrogation arises by virtue of an agreement express or implied, that a third person or one having no previous interest in the matter involved shall, upon discharging an obligation or paying a debt, be substituted in the place of the creditor in respect to such rights, remedies, or securities as he may have against the debtor.
>
>    . . . [S]ubrogation is not founded on contract or privity or strict suretyship, but is born of equity, and results from the natural justice of placing the burden where it ought to rest.  The remedy depends upon the principles of justice, equity, and benevolence to be applied to the facts of the particular case.  It is of equitable origin, adopted to compel the ultimate discharge of a debt or obligation by him who in good conscience ought to pay it.  The remedy is to be administered according to the established rules of equity jurisprudence.

Id. (citations omitted).  In Kent, a second mortgagee paid off a first mortgagee who held a purchase money lien on real estate which had priority over a previous judgment lien.  Id.  The court held that the second mortgage took the place of the first in regards to priority of liens.  Id.  It noted there were no intervening equities, "the result being merely to establish a lien prior to the judgment in the precise amount of the first purchase money mortgage." Id. at 855.

Support for the doctrine of equitable subrogation appears in several early Iowa cases.  In Home Owners' Loan Corp. v. Rupe,

283 N.W. 108, 110 (Iowa 1938), the court found that a second mortgagee was equitably subrogated to the rights of a first mortgagee against a third party claiming an intervening interest. It noted that the intervener was in no way mislead or injured. Id. Likewise, in Bennett v. First Nat'l Bank, 102 N.W. 129, 130 (Iowa 1905), the court affirmed a claim of subrogation to the lien of a first mortgagee. "A payment made by the plaintiff in good faith to protect her lien shall not operate to destroy that lien, and permit a junior creditor to have precedence over her." Id.; see also Templeton v. Stephens, 233 N.W. 704, 707 (Iowa 1930) (affirming decree holding a mortgagee who paid off an earlier mortgage was entitled to subrogation to the extent of the amount paid to satisfy the first mortgage).

Equitable subrogation is not granted to one who pays the debt of another as a pure volunteer or intermeddler. Miller & Chaney Bank, 234 N.W. at 552; Wormer v. Waterloo Agricultural Works, 14 N.W. 331, 332 (Iowa 1882). It is not available until after payment of the prior mortgage is made and only to the extent of the amount paid on the prior mortgage. See Templeton, 233 N.W. at 707; Leach v. Commercial Savs. Bank, 213 N.W. 517, 520 (Iowa 1927).

In Kent, the court stated equity will not rectify a mistake due to inexcusable negligence. 164 N.W. at 855. It noted that reliance on an abstract of title not brought up to date was adjudged negligence, citing Fort Dodge Building & Loan Ass'n v. Scott, 53 N.W. 283 (Iowa 1892), which refused to grant equitable subrogation where the plaintiff failed to exercise diligence in examining the records. See also Webber v. Frye, 202 N.W. 1, 2 (Iowa 1925) (stating the right of subrogation is lost by inexcusable negligence on the part of the person asserting it). In Kent, however, the court found the plaintiff should not be denounced in relying on assurances of the debtor regarding the title of real estate. 164 N.W. at 855.

The case of Zeidel v. Dunne, 626 N.Y.S.2d 509, 510 (N.Y. App. Div. 1995), is factually similar to this case, although decided under New York law. A bank paid off prior mortgages when it entered into a mortgage with the debtors. Id. at 509. Before it recorded its mortgage, a subsequent mortgage was recorded, which gave it priority under New York's race-notice statute. Id. The court applied the doctrine of equitable subrogation to find the refinancing mortgage, which was recorded last, had priority over the later mortgage which was recorded first. It stated: "To permit the plaintiffs' [] mortgage to have priority over the bank's mortgage would result in the unjust enrichment that the doctrine of equitable subrogation was designed to

6

address." Id. Another case has arisen under Oklahoma law, Mortgage Elec. Registration Sys., Inc. v. United States, 134 P.3d 913, 917 (Okla. Civ. App. 2006), in which MERS was found eligible for equitable subrogation where it refinanced a previous mortgage without knowledge of intervening tax liens due the IRS. The case was remanded on the issue of whether MERS committed an inexcusable mistake in failing to discover the existence of the intervening IRS lien. Id. at 918. Equitable subrogation and the priority of liens refinancing prior liens are extensively discussed in Houston v. Bank of Am. Fed. Savs. Bank, 78 P.3d 71 (Nev. 2003); Restatement (Third) of Property: Mortgages § 7.6 (1997); and Carol Vento, Annotation, Discharge of Mortgage and Taking Bank of New Mortgage as Affecting Lien Intervening Between Old and New Mortgages, 43 A.L.R.5th 519 (1996).

**ANALYSIS**

On September 20, 2004, FSA did not have actual or constructive notice of MERS' prior mortgage executed September 13, 2004. It did, however, have notice of the Option One mortgage which was paid off by funds from the MERS mortgage transaction with Debtor. Based on the established facts, the Court concludes that MERS is entitled to equitable subordination. MERS loaned Debtor funds, most of which were paid to satisfy Option One's mortgage. MERS paid Option One $66,965.92 on September 17, 2004, prior to FSA's mortgage dated and recorded September 20, 2004. The mortgage between Debtor and MERS agrees that MERS will have a first lien on the real estate.

MERS is not considered a volunteer or intermeddler for purposes of equitable subordination. Rather, it is a junior lienholder paying off a senior lien in order to protect its security. Negligence by a mortgagee in failing to search title records can undermine its right to equitable subrogation. MERS, however, was correctly informed about instruments affecting title. It knew about Option One's mortgage and agreed to pay it off. FSA's mortgage was not yet in existence, let alone a matter of record.

FSA agreed to loan Debtor funds and sought to receive the best lien available. It knew Debtor had a first mortgage with Option One and that the best lien available was a second mortgage. To the extent that MERS paid off the Option One mortgage prior, FSA is not prejudiced by MERS' intervening lien. FSA is in the same position, whether its lien is junior to Option One or to MERS.

In summary, the doctrine of equitable subordination is applicable here.  MERS is equitably subordinated to the priority of the lien held by Option One.  Its lien is senior to the lien of FSA.  MERS' rights in this regard are limited to the extent of Option One's.  In the absence of evidence to the contrary, the Court assumes the value of MERS' lien is $66,965.92, which is the amount it disbursed to Option One according to the Settlement Statement admitted as Defendant's Exhibit C.  FSA's mortgage lien is junior to MERS' mortgage lien.

**WHEREFORE**, Plaintiff's Complaint to determine secured status is GRANTED.

**FURTHER**, Defendant Mortgage Electronic Registrations Systems has the first mortgage on the premises in the amount of $66,965.92.

**FURTHER**, the mortgage of Defendant Farm Service Agency is junior to the mortgage of MERS.

**FURTHER**, judgment shall enter accordingly.

DATED AND ENTERED:  September 14, 2006

*/s/ Paul J. Kilburg*

PAUL J. KILBURG
U.S. BANKRUPTCY JUDGE